UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| THE MCGRAW COMPANY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AEGIS GENERAL INSURANCE AGENCY, INC., et al., <br><br> Defendants. | Case No. 16-cv-00274-LB <br><br> **ORDER ON MOTION TO DISMISS** <br> [Re: ECF No. 33] |

## INTRODUCTION

This is an unfair-competition suit between rival insurance companies. The plaintiffs claim, in short, that the defendants disparaged them in the marketplace, took proprietary information from their computers, and poached their employees. The defendants move to dismiss the entire First Amended Complaint ("FAC"). (ECF No. 33.)[1] Their main argument is that the plaintiffs charge them with a "unified course of fraudulent conduct," so that the "entire complaint" is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). The defendants contend that the FAC's allegations are not "particular" enough to satisfy Rule 9(b), and that the whole complaint must therefore be dismissed. The defendants make additional arguments against discrete parts of the FAC. (ECF No. 33 at 22-28.)

---

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER (No.16-cv-00274-LB)

The parties have consented to magistrate jurisdiction. (ECF Nos. 6, 19, 21.) This matter can be determined without oral argument. *See* Civil L.R. 7-1(b). For the reasons given below, and as more fully described below, the court partly grants and partly denies the defendants' motion.

## STATEMENT

### 1. The Plaintiffs' Allegations & Claims

For present purposes, it will do to identify three central grievances in the FAC, three discrete sets of facts from which the plaintiffs' various legal claims grow. The first is trade libel. It is grounded in allegations of fraud. Specifically, the plaintiffs allege that defendant Billen falsely told one of their customers that the plaintiffs would stop providing a certain type of insurance ("powersports" insurance) — and that the defendants could provide this service.[2] Second, the plaintiffs claim that defendants Billen and Preininger wrongfully accessed the plaintiffs' computers and took proprietary information for the defendants to exploit.[3] Third, the plaintiffs claim that the defendants systematically poached their employees.[4] (All three individual defendants formerly worked for the plaintiffs.[5]) This three-part description is not meant to limit the plaintiffs' legal theories. The point of this list is only to reach an accurate working description of the plaintiffs' most salient grievances for use in this particular analysis.

From these basic allegations of wrongdoing the plaintiffs extrude eight legal claims. They are: (1) violation of the federal Computer Fraud and Abuse Act (18 U.S.C. § 1030); (2) misappropriation of trade secrets (Cal. Civ. Code § 3426); (3) common-law unfair competition; (4) violation of California's Unfair Competition Law (Cal. Bus. & Profs. Code § 17200); (5) trade libel; (6) unjust enrichment; (7) civil conspiracy; and (8) aiding and abetting.[6]

---

[2] ECF No. at 11-12 (¶¶ 44-45, 47).
[3] *Id.* at 7-11 [¶¶ 34-43).
[4] *Id.* at 5-6 (¶¶ 24-33).
[5] *Id.* at 6 (¶¶ 29-30).
[6] *Id.* at 13-23.

**2. The Defendants' Arguments**

The defendants contend that all this amounts to a "unified course of fraudulent conduct," so that the "entire complaint is subject to the heightened pleading standard under Rule 9(b)." (ECF No. 33 at 9.) They argue that the plaintiffs consequently "must . . . allege all facts in their complaint with particularity." (*Id.* at 12.) And they argue that the plaintiffs have failed to do so. The whole complaint should thus be dismissed, in the defendants' view, without leave to amend. The defendants also make other arguments under Rule 8(a) and certain substantive doctrines. These are set out and addressed where appropriate in the Analysis, below.

## GOVERNING LAW

A claim will normally survive a motion to dismiss if it offers a "short and plain statement . . . showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). This statement "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Fraud allegations, however, elicit a more demanding standard. Procedural Rule 9(b) provides: "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). Like the basic "notice pleading" demands of Rule 8, a driving concern of Rule 9(b) is that defendants be given fair notice of the charges against them. *See, e.g., In re Lui*, 2016 WL1212113, *1 (9th Cir. Mar. 29, 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (quotation omitted); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

Rule 9(b) does not govern non-fraud assertions. "Where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened

pleading standard." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citing *Vess*, 317 F.3d at 1105). The Ninth Circuit further explained in *Vess*:

> In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely ***entirely*** on that course of conduct ***as the basis of a claim***. In that event, the ***claim*** is said to be "grounded in fraud" or to "sound in fraud," and the pleading ***of that claim*** as a whole must satisfy the particularity requirement of Rule 9(b).

*Vess*, 317 F.3d at 1103-04 (citing cases) (emphases added) (quoted in *Kearns*, 567 F.3d at 1125).

"In other cases," *Vess* continued,

> a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements. . . . ***The rule does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct.***
>
> To require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments . . . would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a).

*Id.* at 1104 (emphasis added). This whole passage could be underlined for its impact on this analysis. It refutes the defendants' core argument, that the "entire complaint" must be stated with particularity (ECF No. 33 at 9), essentially because fraud and non-fraud claims and allegations occur alongside one another.

## ANALYSIS

**1. Rule 9(b) Does Not Require the Whole Complaint to be Pleaded With Particularity**

The bulk of the defendants' motion rests on what the court thinks is a mistaken premise. A mistaken application of Rule 9(b) — in particular, of the subsidiary rule regarding "unified courses of fraudulent conduct." The defendants also misread the plaintiffs' complaint. The plaintiffs do not allege a "unified course of fraudulent conduct" within the meaning of Rule 9(b), as explicated in *Kearns* and *Vess*. That rule does not apply to all their claims, much less to all aspects of the complaint, and does not require the plaintiffs to plead every fact and claim with heightened particularity. Rule 9(b) does apply to parts of the complaint. To the extent that it does, the complaint mostly satisfies that rule's heightened pleading standard.

### 1.1 How Fraud Arises in the Complaint

We should first clarify how fraud arises in the complaint. Where do the plaintiffs allege fraud? What role does it play? This will show that, as a matter of raw description, the defendants misread the complaint.

The only factual allegations of fraud appear in ¶¶ 44-45 and 47 of the FAC. These passages claim that defendant Billen falsely told one of the plaintiffs' customers that the plaintiffs were getting out of a certain line of insurance ("powersports insurance") — and that the defendants could provide the same service. (ECF No. 30 at 11-12 [¶¶ 44-45].) The plaintiffs say that Mr. Billen did this to "damage" and "disparage Plaintiffs in the marketplace," and "to unlawfully divert Plaintiffs' customers to Aegis Powersports as part of . . . Defendants' conspiracy to compete unfairly against Plaintiffs." (*Id.* at 12 [¶¶ 45, 47].) The only factual allegations of fraud are, in other words, tied to (what we may broadly call) the trade-libel claim. But these allegations satisfy Rule 9(b). They describe the "who, what, when, where, and how," *Vess,* 317 F.3d at 1106, of the deception alleged. (*See id.* at 11-12 [¶ 44].) We return to this below. *Infra*, Part 2.

Fraud comes up in two ways in the FAC's legal claims. It is first alleged, specifically, in the Computer Fraud and Abuse Act ("CFAA") claim. (*Id.* at 13-16 [¶¶ 49-62].) Paragraph 59 of that claim alleges that defendant Billen, "on behalf of Defendant Aegis General," acted with an "intent to defraud" the plaintiffs. (*Id.* at 15 [¶ 59].) Factually, though, the CFAA claim is *not* based on the FAC's only factual charge of fraud — *i.e.,* the allegation that Mr. Billen lied to one of the plaintiffs' customers; it is based instead on Mr. Billen's wrongfully accessing the plaintiffs' computers to obtain proprietary information that the defendants then used to their advantage. (*See id.* at 13-14, 16 [¶¶ 49, 54-55, 62].) This "unauthorized access" is said to have defrauded the plaintiffs within the meaning of the CFAA. (*See id.* at 14-16 [¶¶ 49-62].) And, while this is not controlling, it is worth noting that, in stating their CFAA claim, the plaintiffs do not refer to the underlying factual allegations concerning Mr. Billen's purported untruth. (*See id.* at 13 [¶ 49].)

Fraud also appears in the trade-libel charge. (That, again, is where the plaintiffs claim that Mr. Billen lied to one of their customers to "damage," "disparage," and so to "compete unfairly" with

them.) The alleged trade libel is *a* ground — one among others — for six of the plaintiffs' eight claims. It is framed directly as "trade libel" in Claim Five. (*Id.* at 21-22 [¶¶ 84-89].) It is also one of the grounds supporting the claims for statutory and common-law unfair competition (*id.* at 18-20 [¶¶ 69-83]), unjust enrichment (*id.* at 22 [¶¶ 90-92]), aiding and abetting (*id.* at 23 [¶¶ 98-100]), and civil conspiracy (*id.* at 22-23 [¶¶ 93-97]). All these claims, *to the extent that they are based on the alleged fraud*, require heightened pleading under Rule 9(b). *See Vess*, 317 F.3d at 1104; *Kearns*, 567 F.3d at 1124 ("To the extent that a party does not aver fraud, the party's allegations need only satisfy the requirements of Rule 8(a)(2)."). But, as we have already said, and as we shall show below, those underlying "[a]verments of fraud" are mostly stated with sufficient "particularity."

**1.2 Rule 9(b) — The Complaint Does Not Allege A "Unified Course of Fraudulent Conduct"**

The plaintiffs thus allege "some fraudulent and some non-fraudulent conduct." *Vess*, 317 F.3d at 1104. Factually, they do allege fraud; they claim that Mr. Billen lied to their customers. But they also allege that the defendants stole proprietary information, and "raided" their "key executives and employees." (*E.g.,* ECF No. 30 at 2 [¶ 1].) The latter two claims do not involve any factual averment of fraud; neither the information-stealing nor the employee-poaching charges involve factual allegations of misrepresentation, concealment, or other deception. (*See id.* at 7-11 [¶¶ 34-43] [misappropriation], 5-6 [¶¶ 24-33] [poaching].)

The plaintiffs' legal claims are only partially grounded in fraud. The unjust-enrichment claim is grounded only in the fraud-infused charge of trade libel. (*Id.* at 22 [¶¶ 90-92].) The CFAA claim alleges an "intent to defraud" — though, again, this claim grows not from a factual charge of misrepresentation, concealment, or other deception, but from the wrongful taking of information from the plaintiffs' computers. (*Id.* at 13-16 [¶¶ 49-62].) The claim for "misappropriation of trade secrets" does not rest factually — at all — on misrepresentation, concealment, or other deception. (*See id.* at 16-18 [¶¶ 63-68].) Nor is it expressed (like the CFAA claim) in a legal theory that even nominally asserts fraud. (*Id.*) Several claims rest partly on the fraud-based charge of trade libel. But these claims are also grounded in other facts that are unconnected to any claimed fraud. For

example, the unfair-competition claims are grounded in two distinct factual allegations. They allege that the defendants unfairly competed by "engaging in trade libel, spreading . . . false rumors that Plaintiffs intend to exit the powersports insurance sector." (*Id.* at 18, 20 [¶¶ 72, 81].) But these claims also allege that the defendants poached the plaintiffs' employees. (*Id.* at 18-20 [¶¶ 70-71, 74, 79-80].) The conspiracy claim is grounded in the alleged trade libel, employee poaching, and unauthorized taking of the plaintiffs' proprietary information. (*Id.* at 22-23 [¶¶ 93-96].) The aiding-and-abetting claim rests on both the putative trade libel and the employee raiding. (*Id.* at 23 [¶¶ 98-99].)

The plaintiffs thus do not allege a "unified course of fraudulent conduct" within the meaning of *Kearns* and *Vess*. Their complaint cannot be read as a monolithic charge of fraud, or as so suffused with fraud in all its parts that it must be treated as describing nothing but fraud. The plaintiffs instead allege "some fraudulent and some non-fraudulent conduct." *Vess*, 317 F.3d at 1104. Their claims do not all rest "entirely" on fraud. *See id.* at 1105; *Kearns*, 567 F.3d at 1125. Their fraud claims and allegations thus do not subject the whole complaint to Rule 9(b)'s heightened-pleading standard. As the Ninth Circuit has explained, Rule 9(b) "does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct." *Vess*, 317 F.3d at 1104. To the contrary: "To require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments . . . would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a)." *Id.*

The defendants have misread the FAC. Contrary to their view, the FAC's three core grievances (trade libel, misappropriating information, employee poaching) do not all "sound in fraud"; nor are the allegations that do sound in fraud "incorporated into every single claim for relief." (ECF No. 33 at 9.) As part of their error, the defendants also misapply *Kearns* and *Vess*. The "unified course of conduct" sub-rule that those cases describe does not operate as the defendants effectively contend. That sub-rule does not extend a heightened-pleading requirement over a whole complaint whenever fraud claims and allegations appear "alongside" non-fraud claims and allegations. That is the opposite of what *Kearns* and *Vess* say. *See Kearns*, 567 F.3d at 1125; *Vess*, 317 F.3d at 1103-

05. Only those averments that are themselves of fraud, and those claims that rest "entirely" in fraudulent conduct, need be stated with "particularity" under Rule 9(b).

None of this changes simply because an expressly introductory comment in the FAC describes the defendants' conduct as a "concerted effort." The defendants argue that the term "concerted effort" solidifies all their alleged misdeeds into a "unified course of fraudulent conduct" under Rule 9(b). (*See, e.g.,* ECF No. 33 at 8-10.) It does not. First, calling the defendants' acts a "concerted effort" can be read as calling those acts planned or purposeful. (The defendants' reply brief suggests that very definition. (ECF No. 38 at 4 (defining "concerted" as "planned," "deliberate," "contrived").) Calling the defendants' acts "concerted" does not necessarily suggest that they can all be reduced to fraud. Acts may be concerted and yet of different types. Furthermore, the "concerted effort" remark itself does not mention fraud. It describes a "concerted effort to create confusion and eliminate competition . . . and gain an unfair competitive advantage . . . ." (ECF No. 30 at 2 [¶ 1].) That broader effort in turn comprises three distinct types of alleged misconduct: employee raiding; misappropriating confidential information; and fraud-based trade libel. (*Id.*) Finally, whatever the character of this "concerted effort" label, the operative question is whether the FAC's fraud and non-fraud factual allegations and legal claims are so related that they constitute a "unified course of fraudulent conduct" as described in *Kearns* and *Vess*. We have seen that they do not. The introductory "concerted effort" remark does not stretch Rule 9(b) over everything in the complaint.[7]

This case is not like *Robichaud v. Speedy PC Software*, No. C 12-4730-LB, 2013 WL 818503 (N.D. Cal. Mar. 5, 2013), where this court found that the plaintiff had pleaded a "unified course of fraudulent conduct" that subjected all her claims to Rule 9(b). In *Robichaud*, unlike here, the plaintiffs' legal claims really were "all" grounded in the allegation that the defendant company had

---

[7] Some inaccuracies in this area may have resulted from the defendants' continued reference to the original, superseded complaint. The defendants write: "Plaintiffs' claims . . . arise out of a 'concerted scheme' . . . to engage in a unified course of conduct." (ECF No. 33 at 9) (citing "Complaint ¶¶ 1, 12, 24, 25, 46-49"). The term "concerted scheme" does not appear in the FAC. The defendants also quote the plaintiffs' allegation of an "unlawful scheme." (ECF No. 33 at 10) (citing "Complaint ¶¶ 1, 12"). The term "unlawful scheme" does not appear in the FAC.

falsely told the plaintiff that her computer needed repair and that its software could fix the problems that the defendant had identified. *See id.* at *1-*4, *10. From those underlying misrepresentations, the *Robichaud* plaintiff advanced claims under the UCL, for breach of contract, breach of warranty, and so on. *See id.* at *1-*4. Her claims rested "entirely" on the alleged misrepresentations. *See id.* They rested, in other words, on what could be called a "unified course of fraudulent conduct." For the reasons given above, the same is not true in this case.

## 2. The Complaint's Fraud Claims and Allegations Mostly Satisfy Rule 9(b)

Those parts of the complaint that are subject to Rule 9(b) are, for the most part, sufficiently pleaded. They describe with adequate particularity the "who, what, when, where, and how," *Vess,* 317 F.3d at 1106, of the alleged deception. To the extent that Rule 9(b) applies to the complaint, in other words, that rule generally does not warrant dismissal. Those aspects of the FAC's claims and allegations that violate Rule 9(b) are discussed in Part 3, below.

### 2.1 Trade Libel

Fraud appears, as discussed above, in essentially two places in the FAC. First, in the trade-libel allegations, which charge Mr. Billen with lying to one of the plaintiffs' customers about the plaintiffs' supposed plans to "exit the powersports insurance sector," an allegation that is then expressed through various legal claims. Second, the CFAA claim alleges an "intent to defraud."

The fraud-based trade-libel claims and allegations are sufficiently pleaded. Paragraph 44 of the FAC, in particular, lays out the alleged fraud with sufficient specificity. That paragraph alleges in part that,

> on or about November 19, 2014, Defendant Billen visited Motoworld [which is apparently one of the plaintiffs' customers] on Aegis Powersports' behalf and spoke with its President and Manager of Operations, Brian Juhnke. Defendant Billen told Mr. Juhnke that Plaintiffs were exiting the powersports line, and that Motoworld needed a backup provider of powersports insurance products to protect its customers, or words to that effect. Defendant Billen further informed Mr. Juhnke that his new company, Aegis Powersports, was developing a powersports insurance product that it would soon be bringing to market, or words to that effect.

(ECF No. 30 at 11-12 [¶ 44].) This satisfies Rule 9(b). It gives the defendants enough "notice of the particular misconduct . . . that they can defend against the charge" by doing more than just "deny[ing] that they have done anything wrong." *Lui*, 2016 WL 1212113 at *1.

**2.2 Computer Fraud & Abuse Act**

The CFAA claim alleges that Messrs. Billen and Preininger wrongfully accessed the plaintiffs' computers, and "obtain[ed] Plaintiffs' proprietary information," with an "intent to defraud Plaintiffs" and "to compete unfairly against" them. (ECF No. 30 at 15 [¶ 59].) Again, this claim is grounded only on the defendants allegedly accessing, and taking information from, the plaintiffs' computers. It is not based on the only factual allegations that recognizably sound in fraud: *i.e.,* the charge that Mr. Billen lied to one of the plaintiffs' customers. The only place that fraud arises in the CFAA claim is in the allegation that the defendants acted with an "intent to defraud." But this allegation does not require "particular" pleading. Under Rule 9(b), "intent . . . may be alleged generally." Fed. R. Civ. P. 9(b). At all lengths, the facts that underlie the CFAA claim — the unauthorized computer access and information-taking — are alleged with due specificity. In this respect the FAC alleges:

> At some time before Defendant Preininger resigned his employment with Plaintiffs to begin working for Aegis Specialty, he uploaded proprietary, confidential, and trade secret privileged documents belonging to Plaintiffs to his personal Drop box account.

(ECF No. 30 at 8 [¶ 36].) The FAC then specifically names a suite of documents that Mr. Preininger supposedly took. (*Id.* at 8-10 [¶¶ 36, 38, 40].) The FAC makes similar allegations about Mr. Billen, adding to the list of allegedly misappropriated documents the further allegation of an approximate date on which the unauthorized computer access and misappropriation occurred. (*Id.* at 10-11 [¶¶ 41-43].)

### 3. Claims & Allegations That Violate Rule 9(b)

#### 3.1 Spreading False Rumors

Some aspects of the FAC do run afoul of Rule 9(b). Paragraph 47 avers that "agents or employees of Defendants Aegis Specialty and Aegis Powersport spread the false rumors that Plaintiffs were abandoning the powersports sector to damage Plaintiffs in the market . . . ." (*Id.* at 13 [¶ 47].) This allegation, lodged against the "Defendants" generally, then appears in the statutory and common-law unfair-competition claims. (*Id.* at 18, 20 [¶¶ 72, 81].) This allegation fails to give the particulars of the allegedly false rumors. It does not say who spread these rumors, how, to whom the rumors were repeated, and so on. The court dismisses this allegation with leave to amend.

#### 3.2 Aiding and abetting

The defendants rightly argue that the aiding-and-abetting claim (ECF No. 30 at 23 [¶¶ 98-100]), insofar as it is attached to the fraud-based trade libel, must be pleaded with due particularity. Aiding and abetting in California law requires the defendant to have "substantially assisted" in the underlying wrong. *See, e.g., Casey v. U.S. Bank N.A.*, 127 Cal. App. 4th 1138, 1144 (2005). "Federal courts have held that the substantial assistance prong of a claim that defendant aided and abetted the commission of a fraud must be pled with heightened specificity." *Neilson v. Union Bk. of Cal., N.A.*, 290 F. Supp. 2d 1101, 1129-30 & n. 81 (C.D. Cal. 2003) (citing cases). Yet the FAC's only allegations in this respect are general, even conclusory. Paragraphs 45 and 47 of the FAC allege:

> Upon information and belief, Defendant Summers, Defendant Preininger, and Defendant Aegis General each solicited, encouraged and provided material support to Defendant Billen to make knowingly false statements about Plaintiffs to Mr. Juhnke.
>
> . . . .
>
> Upon information and belief, Defendant Summers, Defendant Preininger, and Defendant Aegis General each solicited, encouraged and provided material support to agents or employees of Defendants Aegis Specialty and Aegis Powersport to spread the false rumors ["that Plaintiffs were abandoning the powersports sector"].

(ECF No. 30 at 12 [¶¶ 45, 47].) Nothing in the FAC details the alleged assistance in a way that would permit the defendants to prepare an adequate answer, other than merely denying that they did anything wrong. *See Odom*, 486 F.3d at 553. Strictly speaking, the FAC's allegations in this respect might not even satisfy Rule 8(a)(2); they certainly do not satisfy Rule 9(b). To the degree that it is attached to the fraud-based trade-libel allegations, the aiding-and-abetting claim is therefore dismissed with leave to amend.[8]

### 3.3 Trade Libel — Mr. Summers and Mr. Preininger

Furthermore, as a specific consequence of the court's holdings on the "spreading false rumors" allegation, and the "aiding and abetting" claim, the fraud-based trade-libel claim is dismissed without prejudice insofar as it is asserted against Mr. Preininger and Mr. Summers. The plaintiffs do not allege, with any degree of particularity, that these defendants took any acts that would subject them to liability for trade libel or aiding and abetting trade libel.

### 3.4 Conspiracy

The conspiracy claim is subject to pruning. The FAC alleges that the individual defendants were all agents or employees of the corporate defendant and of one another. (*See* ECF No. 30 at 4, 6 [¶¶ 13, 25, 29-30].) The defendants correctly argue that, under what they call the "agent's immunity rule," as a matter of law agents or employees cannot conspire with their principal or employer. (ECF No. 33 at 25-26) (citing, among others, *Black v. Bank of Am.*, 30 Cal. App. 4th 1, 4-5 (1994)); *accord, e.g., AccuImage Diagnostics Corp. v. TeraRecon, Inc.*, 260 F. Supp. 2d 941, 947 (N.D. Cal. 2003). The FAC also alleges, however, that the defendants conspired with each other *before* defendant Aegis General hired them. To the extent that the FAC alleges a conspiracy that existed before the defendants entered agency or employment relationships with one another, those allegations are not subject to dismissal under the "agent's immunity rule." To the extent that

---

[8] The aiding and abetting claim is not subject to this analysis insofar as it is attached to the employee-raiding allegations (*see* ECF No. 30 at 23 [¶ 99]), and to that extent survives.

the conspiracy allegations run afoul of this rule, though, they are dismissed with prejudice. The defendants cannot premise liability on allegedly conspiratorial acts that took place after the defendants became each other's agents or employees.

Furthermore, insofar as it is premised on the putative, fraud-based trade libel (*see* ECF No. 30 at 23-24 [¶¶ 94-95, 97]), the plaintiffs were required to plead conspiracy with specificity. *Cf. Neilson*, 290 F. Supp. 2d at 1130 n. 81 (applying Rule 9(b) to aspects of aiding-and-abetting claim). They have not done so. They have not pleaded specifically the acts by which the defendants supposedly formed their trade-libel conspiracy. And, except with respect to Mr. Billen (*see, e.g.,* ECF No. 30 at 23 [¶ 95]), they have not specifically pleaded "acts done in furtherance of the common design." *See AccuImage*, 260 F. Supp. 2d at 947 ("To properly plead a conspiracy cause of action, the plaintiff must allege 'the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design.'") (quoting *Mox, Inc. v. Woods,* 202 Cal. 675, 677 (1927)). The claim for civil conspiracy to commit trade libel is, for this additional reason, dismissed with leave to amend.

### 4. Other Arguments

#### 4.1 Alter Ego

The court agrees with the defendants that the FAC's alter-ego allegations are wholly conclusory and cannot withstand scrutiny even under Rule 8(a)(2). The FAC in this respect alleges only the following: "[E]ach of the Defendants was the . . . alter ego . . . of the others, . . . and each is legally responsible for the acts and omissions of the others." (ECF No. 4 [¶ 13].) No other allegations flesh out this assertion. (*See id., passim*.) Alter-ego liability under California law contains "two general requirements": (1) "that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist"; and (2) that, "if the acts are treated as those of the corporation alone, an inequitable result will follow." *Politte v. United States*, 2012 WL 965996, *9 (S.D. Cal. Mar. 21, 2012) (citing *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985)). "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well

1   as facts supporting each." *Neilson*, 290 F. Supp. 2d at 1116 (citing cases); *accord, e.g., Gerritsen v.*
2   *Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1136-37 (C.D. Cal. 2015). The alter-ego allegations
3   are therefore struck with leave to amend.

**4.2 Unjust Enrichment**

The defendants argue that the unjust-enrichment claim does not state an independent cause of action under California law. The law on this point is unclear. Decisions in this district have reached different conclusions. *Compare Barocio v. Bank of Am., N.A.*, No. C 11-5636 SBA, 2012 WL 3945535, *4 (N.D. Cal. Sept. 10, 2012) (dismissing claim: "This Court has previously concluded that there is no independent claim for unjust enrichment.") (citing *Newsom v. Countrywide Home Loans, Inc.,* 714 F. Supp. 2d 1000, 1009-10 (N.D. Cal. 2010)) *with Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667 JCS, 2011 WL 30759, *17-18 (N.D. Cal. Jan. 3, 2011) ("This Court agrees . . . that a claim for restitution exists under California law") (discussing precedent). On the present record, at this stage of this lawsuit, the court declines to dismiss the unjust-enrichment claim. There seems to be no harm, for now, in letting this perhaps redundant claim go forward. Especially since, whatever else may be said of it, the unjust-enrichment claim seeks something (the restitution of money) that is available under the Unfair Competition Law and possibly as a remedy for other claims. The court takes under advisement the parties' positions on this "unclear" point of California law. *See Nordberg v. Trilegant Corp.,* 445 F.Supp.2d 1082, 1100 (N.D. Cal. 2006) ("unclear") (quoted in *Reyes*, 2011 WL 30759 at *17) ("unclear").

\* \* \*

The defendants' remaining arguments are without merit. Beyond the issues discussed in this order, the FAC alleges "plausible" claims for relief under Rule 8(a)(2), *Iqbal*, and *Twombly*. None of the defendants' additional arguments provides a ground for dismissing any part of the FAC.

## CONCLUSION

The court partly grants and partly denies the defendants' motion. All the dismissals in this order are with leave to amend. (Except for the partial dismissal under the agent's immunity rule.) If the plaintiffs wish to amend their complaint to salvage the claims and allegations dismissed by this order, they must do so by August 10, 2016.

**IT IS SO ORDERED.**

Dated: July 13, 2016

_____
LAUREL BEELER
United States Magistrate Judge